IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARI LYNN SHARIF, )
)
Plaintiff, )
)
v. ) Civil Action No. 09-848
)
MICHAL J. ASTRUE, )
COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 28th day of September, 2010, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, denied. The Commissioner's decision dated May 29, 2008, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

AO 72
(Rev. 8/82)

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her applications for disability insurance benefits[1] and supplemental security income on November 22, 2006, alleging a disability onset date of January 1, 2006, due to bipolar disorder, anxiety disorder and fibromyalgia.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient coverage to remain insured through September 30, 2010.

Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on April 18, 2008, at which plaintiff, represented by counsel, appeared and testified. On May 29, 2008, the ALJ issued a decision finding that plaintiff is not disabled. On May 20, 2009, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 53 years old at the time of the ALJ's decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §§404.1563(d) and 416.963(d). Plaintiff has at least a high school education and has past relevant work experience as a social worker, certified nursing assistant and teller. However, the ALJ found that she has not engaged in "sufficient" substantial gainful activity since her alleged onset date of January 1, 2006. (R. 11).

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of fibromyalgia, bipolar affective disorder and anxiety disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ further found that plaintiff retains the residual functional capacity to perform a significant range of light work but with certain restrictions recognizing the limiting effects of

her mental impairments.[2] A vocational expert then identified numerous categories of jobs which plaintiff could perform based upon her age, education, work experience and residual functional capacity, including office cleaner, hotel-motel cleaner and stock clerk. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a

---

[2] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform light work "except that she is restricted to simple instructions and simple tasks; she needs to avoid direct interaction with the public, close interaction with coworkers, and changes in the work setting." (R. 14).

AO 72
(Rev. 8/82)

claimant is under a disability.[3] 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's finding of not disabled at step 5 of the sequential evaluation process. Specifically, plaintiff contends that: (1) the ALJ failed to properly evaluate the medical evidence from her treating psychiatrist, Dr. Ortiz; and, (2) the ALJ improperly relied on the vocational expert's answer to a defective hypothetical that did not account for all of plaintiff's impairments and limitations. After reviewing the ALJ's decision and the record, it is clear that the ALJ's evaluation of the medical evidence, and resultant finding of not disabled, fail to withstand substantial evidence scrutiny.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to

---

[3] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell, 347 F.3d at 545-46. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

AO 72
(Rev. 8/82)

substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(d)(2) and 416.927(d)(2); Fargnoli v. Barnhart, 247 F.3d 34, 43 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it is to be given controlling weight. Id.

At issue here are the reports of plaintiff's treating psychiatrist, Dr. Eugene Ortiz. On two occasions, Dr. Ortiz opined that plaintiff's bipolar disorder results in severe limitations which would seriously impede plaintiff's ability to work. On September 20, 2007, Dr. Ortiz observed that "[e]ven with medication, [plaintiff] experiences periods of mania" which "occur[s] randomly and frequently enough that [plaintiff] is unlikely to be able to maintain any full time job." (R. 190). On February 28, 2008, after finding that plaintiff would have "poor" ability to make occupational adjustments in a number of areas[4], Dr. Ortiz reiterated his opinion that in light of her bipolar disorder, plaintiff's "ability to perform job functions is significantly inconsistent which precludes satisfactory full time, permanent employment." (R. 238).

The ALJ addressed Dr. Ortiz's reports in his decision and acknowledged that plaintiff's treating sources have "first-hand

---

[4] Specifically, Dr. Ortiz found plaintiff to have "poor" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stress and maintain attention/concentration. (R. 238).

AO 72
(Rev. 8/82)

knowledge" of plaintiff's medically determinable impairments. (R. 16). He further acknowledged that he would be "bound to give controlling weight to such opinion statements if they were consistent with the doctors' own clinical observations and with the longitudinal medical evidence of record ...." Id. However, the ALJ determined that he could not accept Dr. Ortiz's opinion because his assessments "are not consistent with his own longitudinal treatment records." Id.

But a review of the record makes clear that Dr. Ortiz's opinions in fact are supported by his own clinical observations and the medical record as a whole and it is the ALJ's evaluation of Dr. Ortiz's assessment that is not consistent with the longitudinal medical evidence.

Dr. Ortiz began treating plaintiff for her mental impairments in May of 2007. During the subsequent nine-month period, plaintiff's treatment records from UPMC Western Psychiatric Institute and Clinic ("WPIC") demonstrate that plaintiff's level of functioning was highly variable, just as Dr. Ortiz concluded in his assessment. (R. 195-231). From June of 2007 through November of 2007, the record shows that plaintiff alternated between periods of mania and periods of depression with fluctuations in her mood and functional capacity. (R. 198-221). Plaintiff's mood and affect varied from happy to sad, and her own self-assessment of her level of depression varied at times between two and nine on a ten-point scale. Id.

AO 72
(Rev. 8/82)

Dr. Ortiz's medical assessment not only is well supported by his own treatment notes it is consistent with other substantial medical evidence in the record. Dr. Rockey conducted a consultative examination of plaintiff in January of 2007. She too noted that plaintiff experiences frequent changes in mood and that plaintiff exhibited a "moderate to severe reduction in concentration on formal testing today." (R. 162). Dr. Rockey concluded that "owing to a reduction in concentration, she is likely to have difficulty completing complex work-related tasks or adjusting to changes in the work environment." Id. A GAF score[5] of 55 was assessed on that day.

On May 17, 2007, Dr. Bahl opined that plaintiff would be at least "temporarily disabled - 12 months or more" due to her bipolar disorder. (R. 189). Upon an initial psychiatric evaluation of plaintiff on May 29, 2007, at WPIC, the interviewing therapist reported that plaintiff's mood was variable and appeared to fluctuate during the course of the interview. (R. 228). Dr. Kahn assessed a GAF score of 40 at that time. (R. 230). Dr. Gold, who completed a medical statement regarding pain on September 24, 2007, also reported that plaintiff had sleep

---

[5] The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health and rates overall psychological functioning on a scale of 0 to 100. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). A score of 51-60 indicates moderate symptoms. A score of 41 to 50 indicates a serious impairment in functioning. A score of 31 to 40 indicates a major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.

AO 72
(Rev. 8/82)

disturbance, decreased energy and difficulty in concentrating related to pain from her fibromyalgia. (R. 192).

Despite the foregoing evidence, the ALJ nevertheless rejected Dr. Ortiz's assessment, as well as that of Dr. Rockey. However, the ALJ cites in his decision no specific medical evidence contradicting those assessments and his stated reasons for rejecting those opinions are not persuasive.

For example, the ALJ highlighted the fact that on one occasion Dr. Ortiz rated plaintiff's GAF score as 60, "an assessment that refutes [Dr. Ortiz's] characterization of the claimant as disabled." (R. 16). However, the ALJ overlooked the fact that plaintiff's GAF score fluctuated during the relevant time period from a high of 60, as found by Dr. Ortiz in December of 2007 (R. 202-203), to a low of 40, as assessed by Dr. Ortiz in September of 2007 (R. 190) and Dr. Kahn in May of 2007 (R. 230), with other scores in between, such as Dr. Rockey's rating of 55 in January of 2007 (R. 161) and Dr. Ortiz's rating of 45 in February of 2008. (R. 240). These fluctuating GAF assessments actually support, rather than refute, Dr. Ortiz's opinion that plaintiff's bipolar disorder results in periods of mania that occur randomly and frequently and that plaintiff's ability to perform job functions is significantly inconsistent.[6]

---

[6] It should also be pointed out, as the Commissioner often does on appeals to this court, that the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have a direct correlation to the disability requirements and standards of the Act. See 65 Fed.Reg. 50746, 50764-65 (2000). Instead, the ALJ is to consider the clinical

AO 72
(Rev. 8/82)

The ALJ's other criticisms of Dr. Ortiz's assessment likewise are unavailing. While the ALJ questions Dr. Ortiz's failure to indicate how frequent or long plaintiff's manic episodes are, Dr. Ortiz expressly found that they occurred *randomly*, (R. 190) and are inconsistent (R. 238), which suggests it is not possible to predict their exact onset or duration.

To the extent the ALJ attempted to discredit Dr. Ortiz based on plaintiff's activities, which the ALJ found "tend to show that [plaintiff] is able to accomplish quite a bit on a daily basis," (R. 16), it is well-settled that sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity, see Fargnoli, 247 F.3d at 40, n.5. Moreover, the Third Circuit Court of Appeals has recognized that "[f]or a person ... who suffers from an affective disorder or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000). Thus, plaintiff's limited activities of daily living cannot be used as a basis for finding that plaintiff can sustain work on a regular and continuing basis.[7]

---

findings contained in the narrative reports of medical sources and is to weigh that evidence under the standards set forth in the regulations for evaluating medical opinion evidence. The clinical findings in this case support the conclusion that plaintiff's symptoms fluctuate, and the ALJ therefore improperly relied on a single GAF score as evidence refuting Dr. Ortiz's opinion.

[7] Residual functional capacity assesses "an individual's ability to do sustained work-related physical and mental abilities on a regular and continuing basis." SSR 96-8p. "A 'regular and

Finally, the ALJ's rejection of Dr. Rockey's assessment likewise is not supportable. The ALJ brushed aside Dr. Rockey's findings by concluding that "the limitations demonstrated on that one occasion represent something of a low point" and speculating that plaintiff "is generally even more capable than she was during that consultative examination." (R. 16). However, it is a cardinal principle of social security law that an ALJ may not make speculative inferences from medical reports and may not substitute his own lay opinion for those from qualified medical professionals. Morales, 225 F.2d 310 at 317.

Here, the ALJ simply is speculating that plaintiff's condition at the consultative examination by Dr. Rockey was a "low point" and that she "is generally even more capable." To the contrary, the evidence shows that plaintiff's symptoms were even more pronounced at various times during her treatment at WPIC, and sometimes were less so, such as when Dr. Ortiz rated her GAF as 60. Again, what the objective medical evidence of record, taken as a whole, demonstrates is that plaintiff's symptoms fluctuate.

Thus it is clear to the court that the ALJ's evaluation of the medical evidence in this case is not supported by substantial evidence. Because Dr. Ortiz's opinion on the nature and severity of plaintiff's mental impairment is well supported and is not inconsistent with other substantial evidence in the record, it is entitled to controlling weight. Fargnoli, 247 F.3d at 43.

---

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

While the ALJ correctly noted that the ultimate determination of disability is for the ALJ and the opinion of a medical source, treating or otherwise never is entitled to significant weight on that issue, see 20 C.F.R. §§404.1527(e) and 416.927(e), in this case it is the uncontradicted opinions of the treating sources regarding specific limitations arising from plaintiff's impairments, and not the ultimate conclusions as to whether plaintiff is disabled, that are entitled to controlling weight under the appropriate standards for evaluating medical evidence.

Here, Dr. Ortiz opined that plaintiff's ability to perform work is "significantly inconsistent" due to random and frequent periods of mania. This opinion is supported by the overall medical record, including the assessment from the consultative examiner Dr. Rockey, and there is no substantial contradictory medical evidence.

When the record has been developed fully and when substantial evidence in the record as a whole indicates that a claimant is disabled and entitled to benefits, it is unreasonable to remand because of the resulting delay in receipt of benefits, and the decision of the Commissioner will be reversed. See, Brownawell v. Commissioner of Social Security, 554 F.3d 352, 358 (3d Cir. 2008); Podedworny v. Harris, 745 F.2d 210, 221-222 (3d Cir. 1984). Here, the record has been developed fully and substantial medical evidence exists supporting a finding that plaintiff is disabled under the Act.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner solely for a determination as to the amount of benefits to which plaintiff is entitled.

Gustave Diamond
United States District Judge

cc: Jennifer Modell, Esq.
Berger and Green
5850 Ellsworth Avenue
Suite 200
Pittsburgh, PA 15232

Christy Wiegand
Assistant United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219